UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BOBBY P. SOUDELIER                                 CIVIL ACTION

VERSUS                                                NO: 07-4208-ILRL-SS

MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

The plaintiff, Bobby P. Soudelier ("Soudelier"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and his claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3).

## PROCEDURAL HISTORY

On April 7, 2005, Soudelier submitted an application for benefits. R. 44-46. He stated that he became unable to work on August 26, 2004. R. 44. On June 17, 2005, his application was denied. R. 34-37. The noticed stated:

> The medical evidence shows that you were involved in a work related accident in 08/2004 and in a motor vehicle accident on 04/07/05. You are still being treated and recovering from those accidents. Even though you are not able to work now, your condition is expected to improve. It will not prevent you from working for 12 months.

R. 34. On July 18, 2005, he requested a hearing before an Administrative Law Judge ("ALJ"). R. 38. On April 12, 2007, more than twenty months later, there was a hearing before an ALJ. R. 187-

215. On May 22, 2007, the ALJ issued an unfavorable decision. R. 11-24. On May 30, 2007, Soudelier sought review of the decision. R. 7. On July 17, 2007, the Appeals Council denied his request for review. R. 4-6.

On August 20, 2007, Soudelier filed a complaint in federal court. Rec. doc. 1. The Commissioner filed an answer on November 2, 2007. Rec. doc. 7. Soudelier was ordered to file a motion for summary judgment by January 2, 2008, but did not do so. Rec. doc. 3. The case was placed on the call docket. Rec. doc. 9. In response to that notice, Soudelier filed his motion for summary judgment. Rec. doc. 10. The Commissioner filed a cross-motion for summary judgment. Rec. doc. 13.

Soudelier has been represented by counsel throughout these proceedings.

## STATEMENT OF ISSUE ON APPEAL

1. Did the ALJ err by determining that Soudelier's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible?

2. Is there substantial evidence to support the ALJ's determination that Soudelier could perform light duty and sedentary work?

## THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. Soudelier met the insured status requirements of the Social Security Act through December 31, 2009.

2. Soudelier has not engaged in substantial gainful activity since August 26, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. Soudelier has the following condition which is a severe condition within the constraint of Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985) and SSR 96-3p: lumbar spine pain with radiculopathy (20 CFR 404.1520(c) and 416.920(c)).

4. Soudelier does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix (20

CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  Specifically, Listing 1.04 Disorders of the Spine is not met.

5. Soudelier retains the residual functional capacity to perform light work.

6. Soudelier's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible.

7. Soudelier is unable to perform his past relevant work (20 CFR 404.1565 and 416.965).

8. Soudelier was a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9. Soudelier has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering Soudelier's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12. Soudelier has not been under a disability, as defined in the Social Security Act, from August 26, 2004 through the date of this decision, May 22, 2007 (20 CFR 404.1520(g) and 416.920(g)).

R. 16-23.

## ANALYSIS

a. **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993).  Substantial evidence is more than a scintilla but less than a preponderance and is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Newton, 209 F.3d at 452. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Id.; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Newton v. Apfel, 209 F.3d at 453; Greenspan v. Shalala, 38 F.3d

232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).  "The

---

[1] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

Commissioner, rather than the courts, must resolve conflicts in the evidence." Id.

b.     **Testimony at hearing.**

At the time of the hearing, Soudelier was 41 years old. R. 190. He had a high school degree. R. 190. He worked at a shipyard-welding, sandblasting, painting, and at a paper mill as a roustabout and machine operator. R. 190-91. As a machine operator, he was required to move heavy weights. R. 199-200. Welding was his speciality. R. 196.

At the time of the hearing, Soudelier could not remain still, stay in one position long, or remain on his feet long. When he sat down he was in pain. R. 196. He could not stand or sit for more than 15 to 20 minutes before he experienced pain. R. 206. On a scale of one to ten, he experienced pain of about a seven and sometimes an eight. R. 201. There were no days when he is pain free. R. 202. During the day he experienced pain in the low back on the right side and down his right leg. R. 203.

He took medication every day. R. 203. It made him drowsy. R. 196. Although the medication was changed, he still had problems. The medication only took the edge off of his pain. R. 197. After Dr. Ponder gave him an injection, it worked for a couple of weeks but the pain returned. R. 198.

He went to bed about 10:30 p.m. R. 204. At night he experienced constant cramping pain. It prevented him from getting comfortable and sleeping. R. 203-04. It took him one to two hours to fall asleep. R. 204. During the night he was awakened with the pain. R. 204. He slept well only about once or twice a week. R. 204.

He found himself falling asleep during the day. R. 205. He was able to cook if it did not take long prepare. R. 205. He washed a few dishes but did not do any other work in the house. R.

206. He had a riding lawnmower and cut his grass. After he cut the grass, he was in a lot of pain. R. 206. His wife worked. R. 206.

After Hurricane Katrina, there were tree branches down on his property and shingles were missing off of his roof. After the hurricane, he cleaned up his property. The pain became worse, so he went to the doctor. R. 207-08.

He had not sought re-training for other work. R. 197. Dr. Ponder wanted him to try to do light duty work but there was none. R. 198.

The vocational expert testified that Soudelier could not perform his past relevant work if he was limited to sedentary and light work. R. 210. There was work available in the sedentary and light work categories. R. 210. If his testimony was fully credited, there were no jobs that he could perform. R. 211.

c.   **Medical Evidence**.

On August 26, 2004, Soudelier was seen by Jay Vega, M.D., a family practitioner, for complaints of lower back pain. R. 133. An August 26, 2004 x-ray of the lumbar spine revealed disc space narrowing at L4/5 and L5/S1. Degenerative disc disease was suspected. R. 130. A September 2, 2004 MRI of the lumbar spine revealed findings consistent with: (1) degenerative disc disease at L3/4, L4/5 and L5/S1; (2) disc herniations at L4/5 and L5/S1; and (3) neural foraminal narrowing predominantly at L3/4 and L4/5. R. 128-29.

On September 20, 2004, Soudelier was seen by Jimmy N. Ponder, M.D. at the Headache and Pain Center, on a referral from Dr. Vega. R. 125-26. Soudelier reported pain in the low back, left buttock and thigh that began two and a half months earlier in a work accident. The pain was aching shooting pain from the low back to the thigh with numbness. R. 76-77. The diagnosis was lumbar

radiculopathy. He noted that symptomatic lumbar spondylosis was probably a large factor contributing to his painful symptoms. R. 77. Dr. Ponder reported that these spine conditions did not appear to be compressive. R. 125. Dr. Ponder's plan for treatment included EMG studies, CT myelogram of the lumbar spine, extension exercises, light duty work for six to eight weeks; a series of epidural steroid and local anesthetic injections. After discussion with Soudelier, he was given an epidural injection. R. 77 and 97.

On September 21, 24, 28 and 29, 2004, Dr. Ponder's office made follow-up calls to Soudelier. He or his family reported that he was doing better. R. 82. On September 23 and 27, 2004, Soudelier was given epidural injections. R. 88 and 92.

On October 4, 2004, Soudelier was seen by Dr. Ponder, who recommended that he seek light duty work. He was given extension exercises for the lumbar spine. R. 75.

On October 25, 2004, Soudelier was seen by Dr. Ponder for a follow-up visit. Dr. Ponder reported that he was "95% overall better from his low back pain and 100% better in the left thigh after undergoing three epidural steroid and local anesthetic injections and one caudal catheter procedure." R. 74. He was given a release to return to full duty work. R. 74.

On November 18, 2004, Soudelier telephoned Dr. Ponder's office to request a work excuse. He reported that his employer's doctor would not let him return to full duty because of the report of a herniated disc in his back. R. 79.

On December 6, 2004, Soudelier was seen at Dr. Ponder's office. He reported that he was receiving no relief from the pain. He was on worker's compensation and had an attorney. R. 78.

On February 24, 2005, Soudelier was seen by Stefan G. Pribil, M.D., a neurosurgeon, on a referral from Dr. Ponder. He reported mild to moderate pain on the left side in the hip, thigh and

lower leg. After the examination and review of the radiology results, Dr. Pribil recommended a standup open MRI with flexion-extension and EMG and nerve conduction studies. R. 115-16.

On April 7, 2005, Soudelier was seen at the emergency room for Lady of the Sea General Hospital following an auto accident. Soudelier was the driver of his car when he was rear-ended. The physical exam reported that he walked into the emergency room without difficulty. It was noted that he was alert, oriented and in no distress. There were no neurological changes, no new symptoms, and no new complaints. R. 119-21. There was a report of neck pain. A muscle strain in the neck was suspected. R. 122. An x-ray of the cervical spine revealed a normal alignment. R. 123. On April 11, 2005, reported to Dr. Vega that he was in auto accident on April 7, 2005. He complained of soreness in his neck and back. He reported chronic low back pain and anxiety. R. 131-32.

A psychiatric review technique was completed on June 1, 2005 by Lester Barnett, Ph.D. It was noted that he was given antidepressant medication by his family doctor. R. 148. The report concluded that the evidence did not meet the listing criteria for an affective disorder. R. 156. There were no work limitations attributed to the psychiatric disorder. R. 157.

On September 28, 2005, Dr. Vega completed a form in which he reported that Soudelier's disability began on April 11, 2005, he was still disabled, and the future disability was estimated at three to six months. R. 167. On September 27, 2005, Soudelier was seen by Dr. Vega for a regular check-up and to discuss his medication. R. 169. On March 13, 2006, Soudelier was seen by Dr. Vega for a regular check-up and refills of his prescriptions. He reported heartburn every day. R. 165.

A physical residual functional capacity assessment is dated, April 11, 2006. R. 137-44. It

is not signed. The assessment is consistent with light duty work.

On September 23, 2006, Soudelier was seen by Dr. Vega with a complaint of poison ivy all over his body. R. 164.

On December 18, 2006, Soudelier telephoned Dr. Vega and requested an orthopedic referral to Chabert Medical Center. He was told that he would have to wait three to six months until he could be seen at Chabert. R. 163. On December 20, 2006, Soudelier was seen at Chabert's emergency room with complaints of lower back pain and a report that he was out of Vicodin. R. 177-81. On February 8, 2007, Soudelier was seen at Chabert for an emergency room follow-up for chronic low back and leg pain. R. 172.

e. **Plaintiff's Appeal.**

Issue no.1. Did the ALJ err by determining that Soudelier's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible?

Soudelier argues that the ALJ relied heavily on Dr. Ponder's report of October 25, 2004, which cleared him to return to full duty work. R. 74. He testified that while he received relief from Dr. Ponder's treatment, it did not last. He urges that this is confirmed by the referral, on February 24, 2005, from Dr. Ponder to Dr. Pribil, the neurosurgeon. R. 115-16. He argues that his treatment at Chabert Medical Center in December 2006 and February 2007 demonstrates that he continued to experience pain. He states:

> The (ALJ). . . discredits plaintiff's testimony regarding the severity of pain and the effects thereof. Given the fact that plaintiff's testimony regarding the temporary relief of pain via the epidural steroid injections can be substantiated by medical documentation, further weight should be given to his testimony regarding the severity, chronic nature and disabling effects of his injuries.

Rec. doc. 10 at 4. In sum, Soudelier disputes the ALJ's finding on his credibility.

The ALJ reviewed the medical records relating to Soudelier's lumbar spine. R. 17-18. He

determined that Soudelier retained the residual functional capacity to perform activities which permitted him to engage in some light work activity. R. 18. He followed SSR 96-7p, 1996 WL 374186 (S.S.A.), which is concerned with the evaluation of symptoms in disability claims and assessment of the credibility of an individual's statements. R. 19. He determined that while Soudelier's medically determinable impairments could reasonably be expected to produce the symptoms described by him, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. 20.

As required by SSR 96-7p, the ALJ considered Soudelier's daily activities. The ALJ noted: (1) Soudelier's comments to Dr. Ponder concerning a career change; (2) his ability to walk into the emergency room following the April 7, 2005 auto accident; (3) his work on his riding lawn mower; (4) his description of his daily activities as found in an April 15, 2005 report;[2] and (5) a description of his social activities, for example regular attendance at church activities, from the same report. R. 20-21 and 63.

The ALJ noted the length of the interval between visits to his physicians, the report that he experienced increased pain when he cleaned up his property after Hurricane Katrina, and the examination at Chabert Medical Center on December 20, 2006, which was unremarkable and negative on straight leg raising. R. 21 and 178.

The ALJ considered the other factors described in SSR 96-7p for assessing a claimant's

---

[2] On April 15, 2005, Soudelier completed a Function Report - Adult. R. 59-66. The full description of his daily activities was:

> Take a shower. Give mother-in-law her diabetes shot, check her blood sugar. Fix breakfast. When my wife is working, I fix us a lunch. Use ice pack on my back, three times a day. Try to do a little exercise for back once a day, wash clothes, do dishes, and cook if necessary. Watch a little TV with the family. Take a nap. Use pain medication to make it a more pleasant day.

R. 59.

-
-
-

credibility. The ALJ noted that pain was not the predominant focus in Soudelier's life; he did not go to the emergency room for pain; he remained outgoing; he was the major decision maker in his home; he cared for himself; his emotional responses were appropriate; he had no marked restrictions in moving about; he did not suffer from major depression; and he did not consume substantial medications with significant side-effects. R. 23.

The record demonstrates that the ALJ applied the appropriate legal standards in evaluating the issue of Soudelier's credibility. The judgment as to the credibility of testimony at the hearing is the specific province of the ALJ and his evaluation of the severity of the subjective complaints is entitled to considerable judicial deference. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991). The ALJ, as fact-finder, has the duty to evaluate a claimant's credibility. Hollis v. Bowen, 837 F.2d 1378, 1384 (5th Cir. 1988). The ALJ found that Soudelier's statements concerning the limiting effects of his symptoms were not entirely credible. R. 20. The record provides substantial evidence for this finding. The Fifth Circuit has held that a reviewing court should not substitute its judgment for that of the Commissioner. See Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). Soudelier's challenge of the ALJ's finding on credibility is an attempt to have the court substitute its judgment for that of the ALJ, which is not permitted. Id. at 496.

<u>Issue no. 2.</u>     Is there substantial evidence to support the ALJ's determination that Soudelier could perform light duty and sedentary work?

Substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. <u>Carey</u>, 230 F.3d at 135. There is such evidence to support the ALJ's determination that Soudelier could perform light and sedentary work activity. As noted by the Commissioner, no doctor precluded Souderlier from performing all work activity for a period lasting twelve months. Rec. doc. 13 at 7. Soudelier maintained a level of activity at his home which was consistent with the ALJ's determination of his residual functional capacity. He used a riding lawnmower on his property. He cleaned up after Hurricane Katrina. R. 206-208. When Dr. Pribil examined Soudelier on February 24, 2005, he found that the straight leg raising test was negative. A strength examination revealed normal symmetric strength and no evidence of weakness. R. 116. On April 7, 2005, Soudelier appeared at the emergency room after the auto accident. He ambulated without difficulty. The notes indicate that Soudelier was the driver of the vehicle. He was described as alert, oriented and without signs of distress. R. 120-21. On December 20, 2006, Soudelier went to the emergency room at Chabert Medical Center. The neuro/psychological examination found that his motor functions, sensations, reflexes and gait were all normal. R. 177-78. Soudelier's argument is a request that this court re-weigh evidence which it is not permitted to do. <u>Selders</u>, 914 F.2d at 617.

Associated with the challenge to the sufficiency of the evidence, is the contention that ALJ placed undue reliance on the October 24, 2005 report by Dr. Ponder. Rec. doc. 10 at 4. After determining that Soudelier's condition did not meet the listing requirements for disorders of the spine, the ALJ considered the medical evidence beginning with Soudelier's visit to Dr. Vega on August 26, 2004 for complaints of low back pain. He described the results of the September 2,

13

2004 MRI. R. 17. He reviewed the course of treatment by Dr. Ponder, including the report of October 25, 2004. R. 18. This is the only reference in the decision to Dr. Ponder's October 25, 2004 report. Soudelier urges that the ALJ did not give proper consideration to the medical record after Dr. Ponder's October 25, 2004 report. This is contradicted by the record. Immediately after the description of the October 25, 2004 report, the ALJ described the results of Dr. Pribil's examination on February 25, 2005. The ALJ noted that Soudelier was referred to Dr. Pribil, the neurosurgeon, by Dr. Ponder. R. 18. He described the remainder of Soudelier's medical treatment in 2005, 2006 and 2007. R. 21. The ALJ did not rely too heavily on Dr. Ponder's October 25, 2004 report. The ALJ's decision demonstrates that he considered and relied on all of the medical evidence in determining that Soudelier was not disabled.

## **RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that the Commissioner's cross-motion for summary judgment (Rec. doc. 13) be granted and Soudelier's motion for summary complaint (Rec. doc. 10) be denied and Soudelier's complaint be dismissed with prejudice.

**OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 20th day of June, 2008.

**SALLY SHUSHAN**
**United States Magistrate Judge**